UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOE (T.M.) § <br> § <br> *Plaintiff,* § <br> § <br> vs. § <br> § <br> § <br> G6 HOSPITALITY, LLC, § <br> G6 HOSPITALITY FRANCHISING, § <br> LLC, § <br> G6 HOSPITALITY IP, LLC, § <br> G6 HOSPITALITY PROPERTY, LLC, § <br> G6 HOSPITALITY PURCHASING, § <br> LLC, § <br> MOTEL 6 OPERATING, LP, § <br> UNITY PLUS, LLC § <br> § <br> *Defendants.* § | CIVIL ACTION No. <br> 1:23-CV-02598-MLB |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Plaintiff Jane Doe (T.M.) submits this Reply Brief in Support of her Motion for Leave to File the First Amended Complaint ("FAC").

## ARGUMENT

While Defendant Unity Plus, LLC, ("Franchisee") has not opposed T.M.'s request for leave to file the FAC, G6 Hospitality argues the Court should deny the request because amendment would be futile and would cause undue delay. (ECF

1

Nos. 47 and 48). But the proposed amendment is proper under Fed. R. Civ. P. 15(a)(2), which favors liberal amendment.

## I. Allowing amendment would not be futile.

G6 Hospitality advances **fact-intensive** arguments about the allegations in the FAC and, based on those arguments, urges the Court to deny T.M.'s request to amend as futile. However, these arguments do **not** show that the proposed amendment is **clearly futile** and thus do **not** justify denial of leave to amend. *See United States ex rel. Crutcher v. First Guar. Mortg. Corp.,* No. 1:16-CV-3812-TWT, 2023 U.S. Dist. LEXIS 103974, at *12 (N.D. Ga. June 15, 2023) (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 1487 (3d ed. July 2022 update)) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper."). But, even if the court reaches those fact-intensive arguments, it should grant T.M. leave to amend because the FAC adequately pleads the elements of direct and vicarious liability claims against G6 Hospitality under 18 U.S.C. § 1595(a).

### A.   The FAC adequately pleads the *mens rea* element of a direct liability claim.

G6 Hospitality argues that amendment on T.M.'s direct beneficiary liability claim against it is futile because the FAC does not adequately plead the required *mens rea*. But this argument both mischaracterizes the applicable law and improperly discredits T.M.'s allegations. The FAC plausibly pleads *mens rea* under each of three legal theories.

**First**, the FAC alleges *mens rea* at the venture level. G6 Hospitality argues that the FAC improperly relies on G6's *general* knowledge of sex trafficking,[1] but this mischaracterizes the FAC,[2] which alleges that G6 Hospitality had **venture-level** mens rea: actual or constructive knowledge of the widespread and ongoing sex trafficking specifically at the Motel 6 Norcross where T.M. and other victims were trafficked. The FAC clarifies that T.M. relies on a venture involving the trafficking of multiple victims by multiple traffickers at this hotel and adds many allegations about how G6 Hospitality knew or should have known about this trafficking.[3] While G6 Hospitality dismisses these allegations as irrelevant, this venture-level *mens rea* is sufficient to satisfy § 1595(a), which does **not** require victim-specific knowledge. *See G.G. v. Salesforce.Com, Inc.,* 76 F.4th 544, 556 (7th Cir. 2023).[4]

---

[1] The FAC **does** include allegations of G6 Hospitality's general knowledge of the problem of sex trafficking in its hotels and its knowledge of how to detect and respond to sex trafficking in a hotel environment. These allegations are **not** intended to independently satisfy the *mens rea* requirement, but they are directly relevant to the assessment of what G6 knew or should have known about trafficking at the venture level. *See, e.g.*, *A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437, at *21 (S.D. Ohio Dec. 16, 2022).

[2] Attached to T.M.'s Motion to Amend are both a clean copy (ECF No. 43-2) and a redline (ECF NO. 43-3) of the proposed FAC. While the substance of these documents is the same, the redline version has auto-numbering errors. In its opposition to the Motion to Amend, G6 Hospitality cites to paragraphs in the redline version. For the sake of clarity, T.M. will cite to the relevant paragraph numbers in both versions but intends that the clean copy version be filed if the motion is granted.

[3] (ECF No. 43-3 ¶¶ 78-83; 43-2 ¶¶ 70-78).

[4] Nor is the Eleventh Circuit's decision in *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) to the contrary. The *G.G.* plaintiff only alleged that the defendant participated in a sex-trafficking venture involving her trafficking. Here,

3

**Second,** the FAC alleges that G6 Hospitality had direct access to sufficient information so that it knew or should have known about T.M.'s trafficking specifically. While T.M. contends that such victim-specific *mens rea* is not required, her allegations here are sufficient to satisfy § 1595(a)'s *mens rea* standard. Specifically, the FAC alleges (1) many obvious and easily observable signs of T.M.'s trafficking; and (2) specific ways that G6 Hospitality was or should have been aware of those signs based on its monitoring and supervision of the Motel 6 Norcross.[5] The means of this monitoring and supervision included online reviews, customer surveys and complaints, detailed reports Franchisee was required to submit, regular inspections, use of "field agents" to visit the motel, and communications with law enforcement.[6] G6 Hospitality also had real-time access to data that reflected red flags of the sex trafficking at the Motel 6 Norcross.[7]

Part of the support the FAC provides for the inference that G6 Hospitality knew or should have known about T.M.'s trafficking are the allegations about the protocol

---

T.M. alleges G6 Hospitality's participation in a commercial venture facilitating widespread trafficking. As the Seventh Circuit explained in *G.G.*, the scope of the venture alleged determines the relevant scope of the *mens rea* analysis. *Id.* at 557 (distinguishing cases that focused on victim-specific knowledge because in those cases the "ventures and the victims were one and the same" and noting the victim-specific knowledge does not apply to "a civil defendant who participated in a venture engaged in sex trafficking on a substantial scale.")

[5] (ECF No. 43-3 ¶ 55-57, 87-89, 102-110; 43-2 ¶¶ 46-49, 79-81, 94-101).
[6] (ECF No. 43-3 ¶ 103; 43-2 ¶ 95).
[7] (ECF No. 43-3 ¶¶ 107-108; 43-2 ¶¶ 99-100).

that G6 Hospitality had in place that required Franchisee to report suspected criminal activity, including sex trafficking, to G6 Hospitality. The FAC does not affirmatively allege that Franchisee reported T.M.'s trafficking to G6 Hospitality, nor could T.M. do so without the benefit of discovery. However, the FAC clearly alleges that (1) Franchisee had an obligation to report suspected sex trafficking to G6 Hospitality **and** (2) that the obvious red flags of T.M.'s trafficking triggered that reporting obligation.[8] The FAC also alleges that G6 Hospitality knew or should have known about T.M.'s trafficking, and the trafficking of other victims, based, in part, on this reporting protocol.[9] At this stage, the Court must draw reasonable inferences in T.M.'s favor. These allegations support reasonable inferences that (1) Franchisee reported instances of suspected sex trafficking to G6 Hospitality before T.M.'s trafficking; and (2) Franchisee reported the obvious signs of T.M.'s sex trafficking to G6 Hospitality. *Cf J.C. v. Choice Hotels Int'l, Inc.,* No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *18 (N.D. Cal. Oct. 28, 2020) ("Pursuant to the policies [Franchisor Defendants] have publicly disclosed, which includes training local hotel staff on sex trafficking issues, it is plausible that the local hotel staff reported incidents involving [Plaintiff] up the chain, such that each defendant knew or should have known that [Plaintiff] was being trafficked.").

---

[8] (ECF No. 43-3 ¶¶ 103, 105-106; 43-2 ¶¶ 95, 97-99).
[9] (ECF No. 43-3 ¶¶ 103, 106; 43-2 ¶¶ 77, 95, 99).

It is particularly appropriate for the Court to draw these reasonable inferences considering the FAC's allegations about whether Franchisee made a specific report is within G6 Hospitality's exclusive control.[10] The pleading standard should not apply in a way that allows a defendant to escape liability through a pre-discovery dismissal by controlling this information. Based on the FAC's allegations, it is reasonable to expect that discovery will produce evidence that reports were made to G6 Hospitality about the signs of T.M.'s trafficking. *Cf. Melia v. LexisNexis Risk Sols., Inc.,* No. 1:23-CV-00904-CAP-JEM, 2023 U.S. Dist. LEXIS 180905, at *3 (N.D. Ga. Oct. 6, 2023) (plausibility standard requires the plaintiff to allege facts that make it reasonable to expect that discovery will uncover evidence to support claim).[11]

Allegations that a condition was obvious and that a defendant had the opportunity to observe it are sufficient to create an inference that the defendant should have known about that condition.[12] Collectively, the FAC's allegations about the

---

[10] (ECF No. 43-3 ¶ 105; 43-2 ¶ 97).

[11] G6 Hospitality asserts that the FAC alleges that "franchisee failed to report signs of her trafficking," implying this means that the FAC alleges that Franchisee failed to report signs of T.M.'s trafficking to G6 Hospitality. (ECF No. 47 at p. 8). This argument mischaracterizes the relevant allegations. The paragraph that G6 Hospitality refers to—when read in context and in the light most favorable to T.M.— alleges that Franchisee and G6 Hospitality **together** engaged collective failures that resulted in T.M.'s trafficking not being reported to law enforcement and not being stopped. (ECF No. 43-3 ¶ 101; 43-2 ¶ 93).

[12] *See, e.g.*, *Greene v. Cosco Shipping Lines Co. Ltd.*, No. 4:20-cv-00091, 2023 U.S. Dist. LEXIS 180875, at *25 (S.D. Ga. Oct. 6, 2023); *Dudley v. NCL (Bah.) Ltd.*, No.

reporting protocol and the other tools that G6 Hospitality used to monitor the Motel 6 Norcross create a reasonable inference that G6 Hospitality had information from which it knew or should have known about the obvious signs of T.M.'s trafficking.[13]

While G6 Hospitality discounts these allegations about tools that it used to supervise and monitor the Motel 6 Norcross by labeling them as conclusory, this misstates what constitutes a **conclusory** allegation. *G.G.*, 76 F.4th at 560 n.18 (conclusory allegations "draw a legal conclusion" or "reframe the elements" of a cause of action). The allegations about the ways that G6 Hospitality supervised and monitored the Motel 6 Norcross are neither legal conclusions nor restatements of the elements of a cause of action. They are factual assertions that must be credited for 12(b)(6) review. G6 Hospitality also attempts to dispute these allegations by relying on its general characterizations of a franchising relationship. However, disputes about a franchisor's role at a hotel do not provide a basis for granting 12(b)(6) dismissal. *T.E.*, 2024 U.S. Dist. LEXIS 21482, at *18 ("Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation.").

---

23-cv-21041-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 143569, at *16 (S.D. Fla. Aug. 15, 2023).

[13] *See T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3185, 2024 U.S. Dist. LEXIS 21482, at *16 (S.D. Ohio Feb. 7, 2024) (allegations that franchisor had access to reservation, payment, internet, and public safety reporting data supported inference that franchisor should have known of trafficking).

**Third**, the FAC satisfies § 1595(a)'s *mens rea* requirement by alleging facts sufficient to support charging constructive knowledge to G6 Hospitality.[14] G6 Hospitality's arguments on this theory of *mens rea* misunderstand the relevant law. G6 Hospitality argues that "imputed constructive knowledge" is not the law in this Circuit, but this is **not** accurate. The plain text of § 1595(a) requires application of constructive knowledge, which is knowledge imputed or charged to a defendant because the defendant would have had the knowledge if the defendant had exercised ordinary diligence. The Eleventh Circuit expressly acknowledged this definition of constructive knowledge in *Doe*, 21 F.4th at 725 (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)).

While G6 Hospitality argues that case law applying constructive knowledge under the TVPRA is addressing **vicarious** liability based on state law of agency, this argument misreads the relevant case law. What the term "should have known" means for the purpose of a direct liability claim under the federal civil remedy in § 1595(a) does **not** turn on state law on agency but, instead, on objective concepts of negligence. *See M. L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, at *18 (W.D. Wash. Sep. 11, 2020). Courts have used this definition of constructive knowledge to charge a defendant with constructive knowledge on a

---

[14] (ECF No. 43-3 ¶¶ 110-126; 43-2 ¶¶ 102-119).

**direct liability** theory based on its failure to exercise ordinary diligence.[15] A plaintiff properly pleads *mens rea* against a hotel franchisor for a claim under § 1595(a) when the plaintiff meets the negligence standard, which the FAC does.[16]

    **B.**    **The FAC adequately pleads the participation in a venture element of a direct liability claim against G6 Hospitality.**

G6 Hospitality also argues that amendment on T.M.'s direct-liability claim is futile because the FAC does not adequately plead that G6 Hospitality participated in a venture. However, the FAC satisfies this element under two theories of venture.

**First**, the FAC alleges a business venture—labeled by the FAC as Venture 2—operating the Motel 6 Norcross.[17] This venture does **not** depend on a direct relationship between G6 Hospitality and the street-level traffickers but, instead, is based on the commercial relationship, which both G6 Hospitality and Franchisee participated in, operating the Motel 6 Norcross with a common objective of generating revenue. This is the venture theory that the Eleventh Circuit recognized as a potential basis for establishing § 1595(a) liability. *Doe v*, 21 F.4th at 727.[18]

---

[15] *See, e.g.*, *T.E. v*, 2024 U.S. Dist. LEXIS 21482, at *13; *E.B. v. Howard Johnson by Wyndham Newark Airport*, Civil Action No. 21-2901 (JXN) (JRA), 2023 U.S. Dist. LEXIS 231401, at *39 (D.N.J. Dec. 29, 2023); *Acevedo v. Exp. Realty, LLC*, No. 2:23-cv-01304-AB-AGR, 2024 U.S. Dist. LEXIS 16498, at *72 (C.D. Cal. Jan. 29, 2024).

[16] (ECF No. 43-3 ¶¶ 110-126; 43-2 ¶¶ 102-119).

[17] (ECF No. 43-3 ¶¶ 15, 148-151; 43-2 ¶¶ 142-145).

[18] The Eleventh Circuit's recent, unpublished decision in *K.H. v. Riti, Inc.*, No. 23-11682, 2024 U.S. App. LEXIS 3127 (11th Cir. Feb. 9, 2024), does not change the analysis. In that case, the plaintiff alleged the defendant participated in a "sex

While G6 Hospitality objects to T.M.'s reliance on Venture 2 as seeking a form of vicarious liability inconsistent with Georgia law, this objection mischaracterizes the venture alleged and the applicable law. Venture 2 does **not** involve vicarious liability of any kind. Instead, it centers of G6 Hospitality's **direct** liability for its choice to continue benefiting from this venture operating the Motel 6 Norcross even once it knew or should have known that hotel was being used for harboring, maintaining, and providing sex trafficking victims in violation of § 1591(a).

G6 Hospitality's argument that this theory of venture cannot support liability because it does not involve any direct connection between it and street-level traffickers mischaracterizes the relevant law. A venture under §1595(a) need not be a criminal sex trafficking venture. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). A business or commercial venture can constitute a §1595(a) venture. *G.G.*, 76 F.4th at 554. For liability to attach under § 1595(a), it is only necessary that the beneficiary-defendants (here G6 Hospitality) continued participating once it knew or should have known that the business relationship was facilitating sex trafficking. Here, the FAC alleges that Venture 2—operation of the Motel 6 Norcross—was engaged in sex trafficking because the rooms of the hotel were being used to harbor, promote, and provide victims of sex

---

trafficking venture" that involved the trafficking of the plaintiff. The court's analysis does not reach the venture alleged here: a commercial venture operating a hotel that facilitated widespread sex trafficking of multiple victims by multiple traffickers.

trafficking.[19] Following the Eleventh Circuit's suggestion that a commercial venture of this type—if properly pled—might support liability under 1595(a), *Doe* , 21 F.4th at 725, other courts have applied a similar theory of venture to hotel defendants.[20]

**Second**, the FAC alleges a business-relationship venture between G6 Hospitality and the population of traffickers at the Motel 6 Norcross—labeled by the FAC as Venture 1—that centers on renting rooms that were used for harboring, maintaining, and providing trafficking victims, including T.M.[21]

While G6 Hospitality argues that T.M. does not adequately plead a venture between G6 Hospitality and sex traffickers because of lack of in-person interaction, nothing in the text of or purpose of § 1595(a) requires in-person interaction. A direct business relationship (renting rooms and providing related services) that continued after G6 Hospitality knew this business relationship was being used for sex

---

[19] The FAC further alleges that Franchisee—which had actual knowledge of the sex trafficking and affirmatively facilitated the trafficking by accommodating traffickers' requests—violated the criminal provisions of the TVPRA as a perpetrator. (ECF No. 43-3 ¶¶ 95, 150, 162; 43-2 ¶¶ 87, 143, 155).

[20] *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04935, 2022 U.S. Dist. LEXIS 227436, at *21 (S.D. Ohio 2022) ("Here, Defendant was involved **in a business venture with the franchisee hotels**, and both groups benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances.") (emphasis added); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL 17363234, at *11 (S.D. Ohio Dec. 1, 2022) (same); *C.T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727 (M.D. Fla. Mar. 11, 2023).

[21] (ECF No. 43-3 ¶¶ 14, 141-147, 161; 43-2 ¶¶ 14, 134-140, 154).

trafficking is enough to establish a § 1595(a) venture, and the FAC pleads that.[22] A franchisor participates in a § 1595(a) venture with criminal traffickers operating at the franchisor's hotel through a continuous business relationship if the franchisor is **intimately involved** in hotel operations or if it **directly participates** in rental of rooms to traffickers.[23] Here, the FAC alleges, in extensive detail, how G6 Hospitality direct participated in the rental of rooms to traffickers and alleges that this continued even after G6 Hospitality knew or should have known about the trafficking.[24]

Moreover, the FAC also alleges that G6 Hospitality participated in this venture with the population of traffickers operating at the Motel 6 Norcross by controlling

---

[22] (ECF No. 43-3 ¶¶ 80-82, 114; 43-2 ¶¶ 72-74, 107).

[23] *See, e.g.*, *M.A.,* 425 F. Supp. 3d at 971 (allegations that franchisor-defendants participated in renting rooms to traffickers were sufficient to allege participation in a venture through continuous business relationship); *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 US. Dist. LEXIS 166836 (W.D. Wash. Apr. 17, 2020), report and recommendation adopted, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020 (allegations that Wyndham participated in hotel operations were sufficient to plead a venture based on business relationship); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250670, at *4 (E.D. Va. Sep. 21, 2020) (allegations that Wyndham and other defendants "were involved in the process of leasing rooms" sufficient to plead a venture based on a business relationship); *B.D.G. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-3202, 2023 U.S. Dist. LEXIS 162052, at *13 (S.D. Ohio Sep. 12, 2023) (plaintiff alleged franchisor participated in a venture with criminal traffickers where it "maintained expansive control over the hotel operation"); *E.B. v. Howard Johnson by Wyndham Newark Airport*, Civil Action No. 21-2901 (JXN) (JRA), 2023 U.S. Dist. LEXIS 231401, at *20 (D.N.J. Dec. 29, 2023 (plaintiff alleged franchisor-defendants participated in venture with criminal trafficker through their involvement in room reservations).

[24] (ECF No. 43-3 ¶ 80, 112-114, 117; 43-2 ¶¶ 72, 105-107, 110).

12

relevant aspects of hotel operations and using that control to create an environment favorable to sex trafficking.[25] *See C.T. v. Wyndham Hotels & Resorts, Inc.,* No. 2:20-cv-634-JES-MRM, 2021 U.S. Dist. LEXIS 33276, at *11 (M.D. Fla. Feb. 23, 2021) (plaintiff pled franchisor's participation in a venture by alleging pattern of acts that facilitated sex trafficking of plaintiff). In doing so, G6 Hospitality formed an implicit understanding with this population of traffickers, attracting them and providing an environment where they could operate without disruption.[26] Both G6 Hospitality and the traffickers were pursuing an objective of increasing revenue from rental of these hotel rooms: G6 Hospitality through increased gross room revenue and the street-level traffickers from the profits generated through the trafficking activity.[27] This is sufficient to plead G6 Hospitality's participation in a venture.

### C. The FAC adequately pleads a vicarious liability claim.

G6 Hospitality also makes a cursory argument that amendment on T.M.'s vicarious-liability claim is futile because the FAC does not adequately plead an agency relationship. But its assertion that T.M. pleads only a typical franchising relationship cannot be squared with the FAC's extensive allegations of control over

---

[25] (ECF No. 43-3 ¶ 90, 96; 43-2 ¶¶ 82, 88).
[26] (ECF No. 43-3 ¶¶ 82, 86, 142-142, 145; 43-2 ¶¶ 74, 78, 136-137, 140).
[27] (ECF No. 43-3 ¶¶ 77, 138-139, 145, 161; 43-2 ¶¶ 69, 131-132, 138, 154).


the means and methods of Franchisee's operations.[28] Courts have repeatedly found allegations less robust than those here are sufficient to plead agency.[29]

In its supplemental response, G6 Hospitality cites *J.K. v. Ramada Worldwide, Inc.*, 2023 U.S. Dist. LEXIS 152941, at *13-14, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) in support of its argument that the FAC fails to plead an agency relationship. (ECF No. 48). However, *J.K.* is distinguishable on several grounds. **First**, the *J.K.* court applied Georgia law to assess actual agency under § 1595(a). However, this issue is properly governed by federal common law.[30] This adheres to the general rule that federal common law governs agency under federal statutes.[31]

**Second**, the FAC's allegations go beyond those the court analyzed in *J.K.* and are sufficient to overcome 12(b)(6) on the issue of agency under either federal common law or Georgia law. While the *J.K.* decision emphasized that the allegations in that complaint were all consistent with a franchisor's pursuit of uniformity, the FAC specifically pleads that the control exercised by G6 Hospitality went beyond enforcement of quality or outcome standards and, instead, involved the means and

---

[28] (ECF No. 43-3 ¶¶ 112-113, 127-135; 43-2 ¶¶ 105-106, 120-128).
[29] *See S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 (M.D. Fla. 2020) (collecting cases); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 U.S. Dist. LEXIS 190054, at *14 (E.D. Cal. Oct. 17, 2022) (same).
[30] *T.E.*, 2023 U.S. Dist. LEXIS 151985, at *23; *J.M*, 2022 U.S. Dist. LEXIS 190054, at *13.
[31] *See Fair Fight Action, Inc. v. Brad Raffensperger*, 599 F. Supp. 3d 1337, 1341 (N.D. Ga. 2022); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740, 109 S. Ct. 2166, 2173 (1989).

methods used, including those related to internal operating functions.[32] This included things like setting required staffing levels, establishing job descriptions for hotel staff, controlling processes for hiring hotel employees, providing employee benefits, directly providing and controlling the tools used for internal operating functions, and setting rates for room rentals.[33] G6 Hospitality also exercised control through its direct involvement in day-to-day operations.[34]

**Third**, the FAC specifically alleges that G6 Hospitality exercised control over the instrumentalities that caused T.M.'s harm, which **also** supports imposition of vicarious liability. *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *25 (N.D. Cal. Oct. 28, 2020). Because G6 Hospitality exercised pervasive control over rental of rooms, hotel security, employee training on human trafficking, and policies and practices on detection of and response to suspected trafficking, it controlled the instrumentalities of T.M.'s harm.[35] The *J.K.* court did not address this issue, but this type of control supports an inference of an agency relationship. *See E.B.*, 2023 U.S. Dist. LEXIS 231401, at *31. If G6 Hospitality's argument prevailed and the FAC's extensive allegations were deemed insufficient to overcome 12(b)(6) on actual agency, the effect would be insulating

---

[32] (ECF No. 43-3 ¶¶ 129-130; 43-2 ¶¶ 122-123).
[33] (ECF No. 43-3 ¶ 113, 130; 43-2 ¶¶ 106, 126).
[34] (ECF No. 43-3 ¶¶ 112-113, 128; 43-2 ¶¶ 105-106, 121).
[35] (ECF No. 43-3 ¶¶ 59, 133, ; 43-2 ¶¶ 51, 126, 161, 168).

franchisors from vicarious liability regardless of how much control they exercised. But that is not the law. Whether a franchisor has created an agency-relationship depends on case-specific facts. *Id.*

## II. Allowing amendment would not cause undue delay.

G6 Hospitality also makes a half-hearted argument that the Court should deny T.M. leave to amend because it would cause undue delay. However, "[t]he mere passage of time, without anything more, is an insufficient reason to deny leave to amend." *United States ex rel. Crutcher v. First Guar. Mortg. Corp.*, No. 1:16-CV-3812-TWT, 2023 U.S. Dist. LEXIS 103974, at *9 (N.D. Ga. June 15, 2023) (quoting *In re Engle Cases*, 767 F.3d 1082, 1118 (11th Cir. 2014)). And the only source of potential delay that G6 Hospitality identifies is **its** plan to file another 12(b)(6) motion. G6 cites no authority that this constitutes a substantial reason to deny T.M.'s request to amend, especially at this early stage.

## CONCLUSION

For these reasons, the Court should grant T.M. leave to file the FAC.

[signature block on next page]

Respectfully submitted,

**PROVOST✯UMPHREY LAW FIRM, L.L.P.**
350 Pine Street, Suite 1100
P. O. Box 4905
Beaumont, Texas 77704
(409) 835-6000
(409) 813-8605 (FAX)

By: /s/ *[signature]*
SEAN C. VILLERY-SAMUEL (*pro hac vice*)
Texas State Bar No. 24070802
svillery-samuel@pulf.com
JAMES E. PAYNE (*pro hac vice*)
Texas State Bar No. 00788171
jpayne@pulf.com

**ANNIE McADAMS, PC**
Annie McAdams (*pro hac vice*)
2200 Post Oak Blvd.
Suite 1000 PNC Tower, 10th Floor
Houston, Texas 77056
(713) 785.6262
(866) 713-6141 (FAX)
teamamc@mcadamspc.com

**DUBOSE MILLER**
Tanya F. Miller
Georgia Bar No. 508434
75 14th Street NE, Suite 2110
Atlanta, GA 30309
(404) 720-8111
miller@dubosemiller.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court pursuant to L.R. 5.1(C) of the Northern District of Georgia, specifically, 14 point, Times New Roman font.

This 20th day of February 2024.

By: _____

SEAN C. VILLERY-SAMUEL (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of February 2024, I electronically filed Plaintiff Jane Doe (T.M.)'s Reply Brief in Support of Motion for Leave to File First Amended Complaint with the Clerk of Court using the CM/EFC system, which will send e-mail notification of such filing to all attorneys of record.

By: _____

SEAN C. VILLERY-SAMUEL (*pro hac vice*)